**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James McGarr,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Repossession Services of Arizona LLC, et al.,<br><br>　　　　　Defendants. | No. CV-21-02022-PHX-GMS<br><br>**ORDER** |

Pending before this Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 32), Defendants' Motion for Summary Judgment (Doc. 34), Plaintiff's Motion to Strike Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment (Doc. 36), Defendants' Motion to Amend Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment (Doc. 38), and Defendants' Motion to Exceed Page Limitation for Controverting Statement of Facts Opposing Plaintiff's Statement of Facts in Support of Motion for Summary Judgment (Doc. 39). These motions are all ruled on, in turn, below.

**BACKGROUND**

Plaintiff James McGarr formerly provided services to Repossession Services of Arizona ("RSAZ"). (Doc. 44-1 at 2). In the course of his work, Plaintiff would drive either a Camera-Car or a tow truck. (Doc. 44-1 at 3). Camera-Cars are vehicles with cameras attached, which capture the license plate and location information of cars to flag qualifying

vehicles for repossession. (Doc. 44-1 at 3). The tow trucks are used to physically repossess qualifying vehicles. (Doc. 44-1 at 3). Cars flagged by the Camera-Car were updated onto a "global repossession platform" called RDN. (Doc. 44-1 at 4). RDN has an application, Clearplan, which is used by RSAZ's tow truck and Camera-Car drivers to track and complete repossessions. (Doc. 44-1 at 4). According to Defendants, the cars would be returned to Arizona Lenders associated with local car dealers or auction houses. (Doc. 44-1 at 12).

RSAZ is an Arizona Limited Liability Company. (Doc. 33-1 at 2–9). Defendants Jose Gonzalez and Chris Finn are listed as managers, and Defendant Gonzalez and MALCK are listed as members of RSAZ. (Doc. 33-1 at 9). MALCK is a holding company for Mr. Finn's business ventures and, together with Mr. Gonzalez, "owns" RSAZ. (Doc. 44-1 at 2).

Plaintiff's suit arises out of alleged unpaid overtime and minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Arizona Minimum Wage Act ("AMWA"), A.R.S. § 23-362 *et seq*. According to Plaintiff, he was employed by RSAZ for approximately four months. (Doc. 33 at 1–2). Plaintiff alleges he would submit hours worked to RSAZ but was never provided overtime pay under the FLSA. (Doc. 33 at 5). Additionally, Plaintiff alleges $300 was impermissibly deducted from his final paycheck in violation of AMWA. (Doc. 33 at 5). Defendant alleges Plaintiff does not qualify for overtime and was, instead, overpaid for his work. (Doc. 44-1 at 5–6, 11). Defendant did not keep records of Plaintiff's work hours and relies only on GPS data from the Camera-Car to support their argument. (Doc. 33 at 5; Doc. 44-5).

Both parties have moved for summary judgment. (Docs. 32, 34) Additionally, Plaintiff has moved to strike Defendants' Statement of Facts (Doc. 36). Finally, Defendant seeks to amend their statement of facts (Doc. 38) and seeks leave for excess pages for their controverting statement of facts. (Doc. 39).

**DISCUSSION**

The Court first disposes of the parties' Cross-Motions for Summary Judgment,

issue by issue. Next, this Court rules on the parties' Motions to Strike, to Amend, and for Leave.

## I. Motions for Summary Judgment

### a. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

### b. Analysis

#### i. Summary Judgment

Under the FLSA, 29 U.S.C. § 201 *et seq.*, employers are "generally require[d] . . . to pay overtime to [non-exempt] employees who work more than 40 hours per week." *East v. Bullock's Inc.*, 34 F.Supp.2d 1176, 1180 (D.Ariz.1998). 29 U.S.C. § 216(b) creates "a private cause of action to recover unpaid overtime compensation." *Dent v. Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir.). Plaintiff and Defendants each seek summary

judgment on whether Plaintiff had an employee–relationship with Defendants and whether Defendants are liable under the FLSA for unpaid overtime. For the reasons below, this Court grants in part and denies in part Plaintiff's Motion for Summary Judgment in part and denies Defendants' Motion for Summary Judgment as to the FLSA issues.

### 1. Employee–Employer Relationship

"Whether an individual is an 'employee' under the FLSA is a question of law." *Martinez v. Ehrenberg Fire Dist.*, No. CV-14-00299-PHX-DGC, 2015 WL 3604191, at *2 (D. Ariz. June 8, 2015) (citing *Purdham v. Fairfax Cnty. School Bd.*, 637 F.3d 421, 427 (4th Cir. 2011)). Under the FLSA, and employee is "any individual employed by an employer." 29 U.S.C. § 203(d). "'Employ' includes to suffer or permit to work." *Id.* § 203(g). An employer is "any person acting directly or indirectly in the interest of an employer in relation to and employee . . . . " *Id.* § 203(d).

Common law or traditional concepts of "employer" and "employee" do not control the interpretation of these terms under the FLSA. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). Instead, courts have settled on expansive interpretations of these terms "to effectuate the broad remedial purposes of the Act." *Id.* A non-exhaustive list of factors, of which none alone are dispositive, is used to assess whether a particular relationship qualifies as employee–employer under the FLSA:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* "Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA." *Id.* at 755.

Even taking the facts listed in Defendants' Controverting Statement of Facts (Doc. 44), the factors listed above demonstrate that Plaintiff was an employee and not an independent contractor for purposes of the FLSA. Defendant accurately states that Plaintiff was not "on call twenty-four house a day, seven days a week." (Doc. 44 at 8). Yet, such a stringent standard is not required for employment status. Instead, Defendant required Plaintiff to submit hours worked, use specific company vehicles, and collaborate with other drivers. (Doc. 44 at 7). Furthermore, Defendant Gonzalez reprimanded Plaintiff in at least two circumstances: when Plaintiff did not clean the car he had driven and when he confronted Plaintiff about his time reports. (Doc. 33-4 at 4; Doc. 44 at 8).

Next, Plaintiff did not have opportunity for profit or loss as a result of his managerial skill. While Plaintiff indisputably would earn more by working longer hours or more efficiently, (Doc. 44 at 8–9), there is no indication Plaintiff was at risk for any loss as a result of his work. Plaintiff bore the risk of a typical hourly employee—i.e., one must work for pay—rather than that of an independent contractor bidding for a job. As such, this factor also demonstrates Plaintiff's employment status.

Similarly, there is no evidence that Plaintiff made substantial investments to complete work for Defendants'. And, any such investment amount is not viewed in a vacuum but is instead considered against the investment of the putative employer. *Real*, 603 F.2d at 755 ("[A]ppellants' investment . . . is minimal in comparison with the total investment in land, heavy machinery and supplies necessary for growing the strawberries."). Here, at most, Plaintiff supplied his personal phone to access the online app. (Doc. 44 at 3) In contrast, Plaintiff was provided with a computer tablet on which he could use the app. (Doc. 44 at 3), as well as the Camera-Cars and tow trucks driven by the Plaintiff. (Doc. 44 at 3).

Defendants allege Plaintiff required special skills indicative of an independent contractor. (Doc. 44 at 9). Defendants, however, refer only generally to general knowledge of applicable law, staying safe, and communication, descriptions that could be used to describe any hourly employee. (Doc. 44 at 9). Accordingly, this factor does not help

Defendants. Additionally, both Plaintiff and Defendants assert Plaintiff worked "at will," indicating his working relationship with Defendants lasted indefinitely. (Doc. 33-2; Doc. 44-3). This indicates the standard employment relationship dictated by Arizona law. A.R.S. § 23-1501(A)(2). Plaintiff's work was also indisputably integral to Defendants' business: Plaintiff identified vehicles ripe for repossession and repossessed ready vehicles with tow trucks. Both of these tasks are integral to the operation of Defendants' business.

Finally, Defendants cite to the agreement signed by Plaintiff and the alleged "1099 level" of his employment. (Doc. 44 at 2; Doc. 44-3). The characterization or wording by Defendants does not reflect the economic reality of their relationship with Plaintiff. As such, this evidence does not have weight on this matter.

When viewing the facts in a light most favorable to Defendants, the undisputed facts demonstrate that Plaintiff and Defendants were in an employee–employer relationship under the FLSA. Accordingly, Plaintiff's Motion for Summary Judgment is granted insofar as Plaintiff qualifies as an employee of RSAZ for purposes of the FLSA.

### 2. Defendants MALCK and Finn as Employers

Defendants move for summary judgment on the issue of whether Defendants MALCK and Finn qualify as employers under the FLSA. Whether an individual is an employer under the FLSA is based on economic realities. *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961). Generally, substantial ownership interest in a company is not sufficient on its own to be considered an employer under the FLSA. *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262–63 (8th Cir. 1963) (holding that the defendant was not an employer under FLSA despite being a controlling stockholder because other managers were assigned FLSA compliance duty and there was no evidence the defendant ever exercised his managerial powers). A defendant is an employer, however, where he has a significant ownership interest coupled with significant operational control. *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983).

Viewing the facts in the light most favorable to the Plaintiff, this Court cannot say that Defendants MALCK and Finn did not have an employer relationship with Plaintiff.

Defendant Chris Finn is the owner of Defendant MALCK, which is a holding company for his business investments. (Doc. 44-1 at 2). MALCK is a member of RSAZ. (Doc. 33-1 at 4). Further, Finn is listed as a Manager with the Arizona Corporation Commission (Doc. 33-1 at 4, 9). While Defendants assert Finn and MALCK were not involved in day-to-day operations, Plaintiff has presented sufficient factual evidence to create a genuine dispute for trial. In other words, Defendants' argument that neither MALCK nor Finn asserted control over RSAZ—despite having authority to do so—relies on the credibility of Defendants' testimony. For these reasons Summary Judgment is not granted on this issue.

### 3. FLSA Coverage

"There are two types of coverage under the FLSA: individual and enterprise." *Smith v. Nov. Bar N Grill LLC*, 441 F.Supp.3d 830, 834–35 (D. Ariz. 2020) (citing *Chao v. A-One Med. Servs., Inc.*, 346 F. 3d 908, 914 (9th Cir. 2003)). "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). An employee is individually covered if their duties require her to be engaged in commerce. *Id.* at 835. "An employee has enterprise coverage if she works for an 'enterprise engaged in commerce.'" *Id.* at 841 (citation omitted). Enterprises are covered when their employees engage in commerce and their "annual gross volume of sales made or business done is not less than $500,000 . . . ." 29 U.S.C. § 203(s)(1). The requirements of § 203(s)(1) are two-fold, making neither element determinative of enterprise coverage on its own. 29 U.S.C. § 203(s)(1) (using "and" instead of "or" for determining enterprise coverage); *see Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1360 (S.D. Fla. 2009).

Courts consider cumulative effect of an employee's work when determining whether a particular activity is commerce. *See Gray v. Swanney-McDonald, Inc.*, 436 F.2d 652, 653 (9th Cir. 1971) (holding the cumulative importance of towing was large enough to be commerce because of the substantial impact the towing industry has on interstates). *But see Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451, 457 (4th Cir. 1963) (holding trash collectors were not engaged in commerce because all employee activity was intrastate and

did not directly and vitally relate to interstate commerce). Internet is an interstate technology, but use of internet alone may not be sufficient for a finding that a particular activity is commerce. *See Leyva v. Avila*, 634 F.Supp.3d 670, 679 (D. Ariz. 2022) ("The mere *use* of an instrumentality of commerce—such as a phone—is insufficient to demonstrate engagement in commerce is such use is purely local and does not actually implicate interstate commerce."); *Smith*, 441 F.Supp.3d at 840 ("[T]here is no evidence that Plaintiff used the internet by dancing to streaming music or by downloading songs, let alone that she did so regularly as a part of her job duties. Therefore, Plaintiff has not met her responsive burden to demonstrate a genuine issue for trial."). *But see Foster v. Gold & Silver Private Club, Inc.*, No. 7:14-CV-00698, 2015 WL 8489998, at *6 (W.D. Va. 2015) (holding employee engaged in commerce because she was required to use internet to stream music for performances).

Parties' submissions indicate there remains a genuine issue of material fact on whether Plaintiff was covered—either individually or by enterprise—under the FLSA. It is not disputed that Plaintiff drove the Camera-Car and tow truck exclusively within Arizona. (Doc. 34 at 12). Additionally, parties agree that Plaintiff was required to use a global online platform that logged and listed available vehicles for repossession. (Doc. 44-1 at 4). Additionally, Defendants' lender-client, for whom repossessions were made, are also not specifically identified in the record and could possibly include out-of-state entities. Accordingly, reasonable inferences could be made for either party sufficient to survive summary judgment.

With commerce being a requirement for either coverage, summary judgment is not granted on this issue.[1]

---

[1] While this court does not reach a conclusion regarding enterprise coverage, the Parties' have already stipulated RSAZ enjoyed $530,005.00 in gross receipts or sales in 2021. (Doc. 31). Additionally, we do not reach the issue of whether Plaintiff was underpaid for overtime because the applicability of the FLSA also may depend on enterprise coverage. Included in this is Defendants request to "offset" any underpayment with amounts overpaid due to Plaintiff's alleged misrepresentation of hours worked. That defense is not triggered until there is a finding that Plaintiff was a covered employee. (Doc. 9 ¶ 20).

### 4. Arizona Minimum Wage Act

Plaintiff also makes a claim under Arizona law that Defendants' deduction of $300 from his final paycheck violated the AMWA. AMWA and FLSA employee status is functionally the same. *Gillard v. Good Earth Power Az LLC*, No. CV-17-01368-PHX-DLR, 2019 WL 1280946 at *10 (D. Ariz. Mar. 19, 2019). For the reasons outlined above, Plaintiff is an employee of RSAZ under AMWA. Employers are permitted to withhold a portion of an employee's wages where there is a "good faith dispute as to the amount of wages due, including . . . any claim of debt . . . ." A.R.S. § 23-352(3). The parties have each presented sworn testimony as to whether there was an actual debt justifying the $300 deduction. (Doc. 33 at 5; Doc. 44-1 at 11-12). As such, there remains a genuine issue of material fact that warrants denial of summary judgment.

### c. Motions to Strike and Amend Defendants' SOF

This Court ordered that statements of fact submitted with dispositive motions be no longer than 10 pages. (Doc. 18 at 4-5). Defendants included an 18-page statement of facts with their Motion for Summary Judgment (Doc. 35) in violation of that order. Defendants have not shown good cause as to why the 10-page maximum was not sufficient. *See* Fed. R. Civ. P. 16(b)(4). Indeed, Defendants filed a Motion to Amend (Doc. 38) only after Plaintiff's Motion to Strike (Doc. 36) brought this error to their attention. Accordingly, this Court will strike Defendants' statement of facts (Doc. 35).[2]

### CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** Plaintiff's Motion for Partial Summary Judgment (Doc. 32) is **GRANTED** to the extent that Plaintiff is determined to be an employee of the Defendant ARSAZ and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** Defendants' Motion for Summary Judgment (Doc. 34) is **DENIED**.

---

[2] Defendants' positions are sufficiently supported by its Controverting Statement of Facts (Doc. 44). As such, Defendants are fortunate that the striking of Doc. 35 will not affect the outcome of their motion.

**IT IS FURTHER ORDERED** Plaintiff's Motion to Strike Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment (Doc. 36) is **GRANTED**.

**IT IS FURTHER ORDERED** Defendants' Motion to Amend Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment (Doc. 38) is **DENIED**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to strike Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment (Doc. 35).

**IT IS FURTHER ORDERED** Defendants' Motion to Exceed Page Limitation for Controverting Statement of Facts Opposing Plaintiff's Statement of Facts in Support for Summary Judgment (Doc. 39) is **GRANTED**.

**IT IS FINALLY ORDERED** Defendants' Controverting Statement of Facts (Doc. 44) is deemed timely filed.

Dated this 12th day of October, 2023.

_____
G. Murray Snow
Chief United States District Judge